## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Sonia N. B. A., | Civil No. 3:21-CV-00709-TOF |
| Plaintiff, | |
| v. | |
| Kilolo Kijakazi, Acting Commissioner of Social Security,[1] | July 20, 2022 |
| Defendant. | |

## <u>RULING ON PENDING MOTIONS</u>

The Plaintiff, Sonia N. B. A.,[2] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for Supplemental Security Income benefits under Title XVI of the Social Security Act. (Compl., ECF No. 1.) She has moved for an order "revers[ing] the decision of the Commissioner of Social Security and award[ing] her Supplemental Security Insurance benefits, or, in the alternative, . . . revers[ing] and remand[ing] the cause for rehearing. (ECF No. 18-1.) The Commissioner has moved for an order affirming the decision. (ECF No. 23.)

The Plaintiff makes several arguments, but her brief focuses principally on two. First, she contends that the Administrative Law Judge ("ALJ") committed legal error by evaluating her

---

[1]    When the Plaintiff filed this action, she named the then-Commissioner of the Social Security Administration, Andrew Saul, as the defendant. (Compl., ECF No. 1.) Commissioner Saul no longer serves in that office. His successor, Acting Commissioner Kilolo Kijakazi, is automatically substituted as the defendant pursuant to Fed. R. Civ. P. 25(d). The Clerk of the Court is respectfully requested to amend the caption of the case accordingly.

[2]    Pursuant to Chief Judge Underhill's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial throughout this opinion. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

physical limitations without the support of proper medical opinions, as the medical consultants examined an incomplete record. (ECF No. 18, at 3-8.) Second, she similarly argues that the ALJ improperly evaluated her mental limitations by discounting the opinions of her treating licensed clinical social worker ("LCSW") and relying on psychological consultants who did not review the entire record. (*Id.* at 8-18.) The Commissioner responds that both arguments "amount to her disagreement with the ALJ's weighing of the conflicting evidence in the record" and that the ALJ's decision was free from legal error and supported by substantial evidence. (ECF No. 23-1, at 3, 15.)

Having carefully considered the parties' submissions, and having carefully reviewed the entire administrative record, I conclude that the ALJ improperly relied on stale medical opinions while analyzing the Plaintiff's physical limitations. When discussing the persuasiveness of the opinions of the State agency medical consultants, the ALJ acknowledged that they did not have the benefit of additional evidence submitted at the hearing level, which showed that the Plaintiff had been diagnosed with fibromyalgia. (R. 29.) The ALJ then found the Plaintiff's fibromyalgia to be a severe impairment. (R. 23.) The ALJ thus determined the impact of a severe impairment without the benefit of any medical opinions opining on that impairment. As to the Plaintiff's second argument, regarding the ALJ's analysis of the Plaintiff's mental impairments, I conclude that the updated record revealed substantially the same limitations as the prior record, so the opinions of the psychological consultants were not stale.

The Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 18) is **GRANTED** to the extent that she seeks vacation of the Commissioner's decision and remand for further administrative proceedings. Because she has not come forward with "persuasive proof" of disability, her motion is **DENIED** to the extent that she seeks an order reversing and remanding

solely for an award and calculation of benefits. (*See* discussion, Section IV *infra.*) The Commissioner's Motion for an Order Affirming the Decision (ECF No. 23) is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On December 7, 2018, the Plaintiff filed an application Title XVI SSI benefits. (R. 21, 279-87.) She claimed that she could not work because of blindness in her left eye, blurred vision in her right eye, and bipolar disorder. (R. 306.) She alleged a disability onset date of March 13, 2013.[3] (R. 279.)

On March 5, 2019, the Social Security Administration ("SSA") found that the Plaintiff was "not disabled." (R. 91.) The SSA again denied her claim on reconsideration on May 9, 2019. (R. 109.) The Plaintiff then requested a hearing before an ALJ, and on February 11, 2020, Judge John Noel held a hearing. (R. 39-74.) The Plaintiff's counsel, Dennis Ciccarillo, appeared on her behalf. (R. 39.) The ALJ also heard testimony from a vocational expert ("VE"), Albert Sabella. (R. 39.)

On April 22, 2020, the ALJ issued an unfavorable decision. (R. 21-33.) As will be discussed below, ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims (*see* discussion, Section II *infra*), and ALJ Noel's written decision followed that format. At Step One of his analysis, he found that the Plaintiff had not engaged in substantial gainful activity since her application date of December 7, 2018. (R. 23.) At Step Two, he found that the Plaintiff suffers from the severe impairments of cataracts, fibromyalgia, posttraumatic stress disorder, and bipolar disorder. (*Id.*) At Step Three, he

---

[3]     The relevant period under review for Plaintiff's SSI benefits runs from December 7, 2018, the date she applied for benefits, through the date of the ALJ's decision, April 22, 2020. 20 C.F.R. §§ 416.330, 416.335; *see Frye v. Astrue*, 485 F. App'x. 484, 485 n.l (2d Cir. 2012) (summary order).

concluded that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  He then determined that, notwithstanding her impairments, the Plaintiff retained the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds; have no exposure to unprotected heights or to moving mechanical parts; can engage in frequent near acuity; can perform simple routine tasks; use judgment limited to simple, work related decisions; deal with routine changes in the work setting; have no contact with the public; and not work on a team with coworkers.

(R. 25.)  At Step Four, the ALJ found that the Plaintiff had no past relevant work.  (R. 31.)  At Step Five, he relied on VE Sabella's testimony to conclude that there are a significant number of jobs in the national economy that the Plaintiff could perform, such as bagger, stringer, and racker.  (R. 31-32.)  In summary, he found that the Plaintiff had not been under a disability, as defined in the Social Security Act, from December 7, 2018, through January 23, 2020.  (R. 22.)

On June 23, 2020, the Plaintiff requested that the Appeals Council review the ALJ's decision.  (R. 275-78.)  The Council found "no reason under our rules to review the [ALJ']s decision" and, therefore, denied the Plaintiff's request for review.  (R. 1.)  It added that if the Plaintiff wished to contest it, she could "ask for court review . . . by filing a civil action."  (R. 2.)

The Plaintiff then filed this action on May 25, 2021.  (Compl., ECF No. 1.)  The Commissioner answered the complaint by filing the administrative record on August 19, 2021.  (ECF No. 14; *see also* D. Conn. Standing Scheduling Order for Social Security Cases, ECF No. 4, at 2 (stating that the Commissioner's filing of the administrative record is "deemed an Answer (general denial) to Plaintiff's Complaint").)  On November 2, 2021, the Plaintiff filed her motion for an order reversing or remanding the Commissioner's decision.  (ECF Nos. 18.)  On January 31, 2022, the Commissioner filed a motion for an order affirming that decision.  (ECF No. 23.)  The

Plaintiff filed her reply brief on February 9, 2022.  (ECF No. 24.)  The parties' motions are therefore ripe for decision.

## II.   APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'"  *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).   To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ."  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ."  *Id.*  At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses a residual functional capacity ("RFC") assessment to determine whether the claimant can perform any of her "past relevant work."  *Id*.  At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience."  *Id.*  The claimant bears the burden of proving her case at Steps One through Four.  *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error. In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision."

*Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

### III. DISCUSSION

As noted above, the Plaintiff makes two principal arguments.  She first argues that the ALJ formulated the exertional component of the RFC and analyzed her physical limitations "without the support of medical opinions."  (ECF No. 18-1, at 3.)  She next argues that substantial evidence does not support the ALJ's weighing of the medical opinions as to her mental limitations.  (*Id.* at 8-9.)  The Court will address these two principal arguments in subsections A and B, respectively, and then will briefly discuss the Plaintiff's subsidiary arguments in subsection C.

### A. The ALJ Relied on Stale Medical Opinions in Analyzing the Plaintiff's Physical Limitations

In formulating the exertional component of the Plaintiff's RFC, the ALJ considered the opinions of state agency medical consultant Dr. Firooz Golkar, who opined that the Plaintiff could perform medium work, and Dr. Marcia Foster, who opined that the Plaintiff had no exertional limitations.  (R. 29.)  While the ALJ noted that their opinions were supported by the record and their explanations, he found them to be "not fully persuasive" because they did not have the benefit of additional evidence that was submitted at the hearing level.  (*Id.*)  The complete record had additional evidence on the Plaintiff's blindness and a new diagnosis of fibromyalgia.  (*Id.*)  The ALJ also considered the opinion of Dr. Jeffrey Kagan, who performed a consultative examination of the Plaintiff.  Dr. Kagan noted blindness in the left eye, swelling, and a limp, but did not provide a functional assessment, nor was he aware of the diagnosis of fibromyalgia.  (*Id.*)  The ALJ considered his examination but found it only partially persuasive.  (*Id.*)  The ALJ did not rely on any other opinions in considering the Plaintiff's physical impairments.  Thus, in concluding that the Plaintiff could perform light work, the ALJ did not rely on any medical opinion that he had

7

found persuasive, nor did he have the benefit of a medical opinion from *any* doctor who was aware of the Plaintiff's subsequent diagnosis of fibromyalgia.

The Plaintiff's principal argument is that the ALJ improperly made his own medical assessment of the record because he did not find any of the medical opinions to be persuasive. (ECF No. 18-1, at 6.)  It is not *per se* error, however, to craft an RFC without finding any one medical opinion fully persuasive.  *See, e.g., My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 104 (W.D.N.Y. 2021) (explaining that plaintiff's argument that ALJ erred by formulating RFC after assigning partial weight to opinions was "a non-starter").  Under the facts of this case, the error lies in the fact that every reviewing doctor reviewed the record *before* the Plaintiff had been diagnosed with fibromyalgia, which the ALJ later found to be a severe impairment.

To clarify, Dr. Kagan examined the Plaintiff on February 22, 2019.  (R. 448-451.)  He noted a history of rheumatoid arthritis; swelling in her hands, knees, and feet; full range of motion with some discomfort in her extremities; 5/5 muscle strength; mild limp; that she used no assistive devices; and that the "bulk of muscles and motor function is normal."  (*Id.*)  He also noted a history of rheumatoid arthritis.  (R. 449.)

Dr. Golkar then provided the first consultative report on March 5, 2019.  (R. 87.)  He was able to review Dr. Kagan's consultative examination, speak with the Plaintiff over the phone to discuss her rheumatoid arthritis and pain symptoms, and review the record evidence submitted at that point.  (R. 78-80.)  He noted from the record the following symptoms under a heading for rheumatoid arthritis: generalized non-pitting edema to right pointer finger and thumb, generalized joint tenderness to palpated joints, and synovitis of right hand.  (R. 82.)  The record also indicated that the Plaintiff had received a referral for a specialist but missed the appointment.  (*Id.*)  On reconsideration, Dr. Foster issued her consultative report on April 23, 2019.  (R. 105.)  Dr. Foster

also reviewed Dr. Kagan's consultative examination and noted the same symptoms from the record as Dr. Golkar.  (R. 99, 105.)  Neither doctor considered the rheumatoid arthritis to be a medically determinable impairment.  (R. 83, 100.)

Then, on the same day that Dr. Foster issued her report, April 23, 2019, the Plaintiff attended her referral with a rheumatology specialist and received her diagnosis of fibromyalgia. (R. 662-68.)  The rheumatologist noted chronic pain involving small joints, worse with activity and somewhat relieved with rest; not associated with swelling; that she denied any red or swollen joints; denied stiffness; history of myofascial pain/fibromyalgia syndrome associated with symptoms off achiness, chronic fatigue, head to toe body pain; "good response" to Lyrica; bilateral joint line tenderness; and soft tissue tender points of moderate intensity.  (*Id.*)  The ALJ summarized the records from the rheumatology specialist (R. 26) and noted that the reviewing doctors did not review these records (R. 29), but did not attempt to procure another medical opinion before determining that the Plaintiff could perform light work.

A medical opinion issued without reviewing the entire record can be considered stale. "[A]n ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history."  *Robinson v. Berryhill*, No. 1:17-cv-00362 (LJV/JJM), 2018 WL 4442267, at *4 (W.D.N.Y. Sept. 17, 2018).  Further, medical source opinions that are stale "may not be substantial evidence to support an ALJ finding."  *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016).  For example, a medical opinion will be stale if it does not account for a claimant's deteriorating condition or if the claimant undergoes surgery after the opinion is issued.  *See Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) (finding medical opinion to be stale when issued five years before ALJ decision and before two subsequent surgeries); *Fambo v. Comm'r of Soc. Sec.*, 474 F.

Supp. 3d 603, 608 (W.D.N.Y. 2020) (medical opinion stale when issued before MRI revealed additional structural damage and claimant underwent knee surgery).

A medical opinion that is based on an incomplete record, however, is not stale where "the treatment notes and opinions in the record before and after [the opinion was issued] demonstrate substantially similar limitations and findings." *Camille*, 104 F. Supp. 3d at 344; *see also Biro*, 335 F. Supp. 3d at 470 ("A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age.").  Nor is a medical opinion stale "merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]," *Steve P. v. Comm'r of Soc. Sec.*, No. 19-cv-0492 (MWP), 2021 WL 307566, at *5 (W.D.N.Y. Jan. 29, 2021), or where the medical opinion is "consistent with additional substantial medical evidence in the record, including [multiple] subsequent [medical] opinions." *Reithel v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 904, 911 (W.D.N.Y. 2018).

Here, comparing the record evidence available to the consultants with the medical records from the rheumatology specialist, it is clear that the new records contain materially different "limitations and findings." *Camille*, 104 F. Supp. 3d at 344.  The record evidence that the consultants summarized concerning the Plaintiff's physical limitations before she received her fibromyalgia diagnosis – that is, the "before" in the "before and after" comparison – includes normal bilateral hand x-rays, generalized non-pitting edema to right pointer finger and thumb, generalized joint tenderness to palpated joints (hands, wrists, ankles), synovitis (joint swelling) of right hand, a notation that she needs to see a specialist, and a summary of Dr. Kagan's report, which showed swollen knee, full range of motion, some discomfort, and mild limp.  (R. 82, 99.) Exhibit 2F, records from her primary care physician, Dr. Ovanes Borgonos, which was available to the consultants, also states "joint pain has significantly improved with Lyrica"; normal range of

motion; no edema; continues to have joint pain in hands, wrists, knees and back; difficulty with holding heavy objects; twisting of wrist is difficult; worsening joint pain, especially involving hands and knees; and low back pain.  (R. 379-83, 389.)

In the rheumatology records – which are part of the "after" in the "before and after" comparison – the Plaintiff reports history of pain involving small joints of hands, knees, and feet (R. 662); small tissue points of mild to moderate intensity (*Id.*); head to toe body pain which is diffuse and in soft tissues and skin and is associated with burning, tingling, and sensitivity to touch (R. 655); intermittent muscle spasms, chronic fatigue, and myalgias (*Id.*); and chronic symptoms of mechanical arthralgias associated with myofascial pain involving small joints of bilateral hands and knees.  (R. 660.)  The records available to the consultants did not demonstrate any soft tissue pain, burning or tingling sensations, muscle spasms, or myofascial pain.  The Court also notes that throughout the logs completed by the Plaintiff's daily visiting nurse (exhibits 18F-21F, R. 814-1377), the Plaintiff sometimes reports pain of varying intensities; (*see e.g.*, R. 930, 977, 984, 990, 1008, 1026, 1041, 1046, 1055, 1060, 1075, 1080, 1099, 1117, 1122, 1127, 1132, 1157); and sometimes she reports no pain at all.  (R. 996, 1002, 1015, 1020, 1037, 1050, 1071, 1112, 1144, 1148, 1152.)  It may well be that the day she was examined by Dr. Kagan her symptoms were mild or pain free.  Furthermore, the Second Circuit has warned that fibromyalgia is a disabling impairment that frequently eludes objective measurement, as "there are no objective tests which can conclusively confirm the disease."  *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (quoting *Preston v. Sec. of Health and Human Servs.*, 854 F.2d 815, 818 (6th Cir.1988)). Since the medical consultants were not aware of the Plaintiff's diagnosis of fibromyalgia and did not review any records from the rheumatologist they could not accurately opine on the Plaintiff's physical limitations.  Their opinions were therefore stale.

Where an ALJ relies solely on stale opinions, courts generally find that the RFC is not supported by substantial evidence, unless the plaintiff only has minor impairments. *See Biro*, 335 F. Supp. 3d at 470; *Fambo*, 474 F. Supp. 3d at 608; *McGrady v. Saul*, No. 18-cv-1187-MJR, 2020 WL 2538483, at *4 (W.D.N.Y. May 19, 2020). Accordingly, I conclude that there is a gap in the record necessitating a remand. On remand, the ALJ should consider the impact of fibromyalgia and related symptoms on the Plaintiff's physical limitations.

**B.**   **The ALJ Appropriately Considered the Medical Opinions in Analyzing the Plaintiff's Mental Limitations**

The Plaintiff next argues that the ALJ incorrectly determined the persuasiveness of the medical opinions of the psychological consultants and her treating Licensed Clinical Social Worker, Kevin Chiang. (ECF No. 18-1, at 8.) Although the foregoing disposition of her physical limitations argument entitles her to remand, the Court will nonetheless address her psychological limitations arguments for the guidance of the parties and the ALJ.

In formulating the mental components of the RFC, the ALJ considered the opinions of state agency psychological consultants Kelly Rogers, Ph.D. and Janine Swanson, Psy.D., who both opined that the Plaintiff had no more than moderate limitations in the areas of mental functioning. (R. 29.) The ALJ found their opinions supported by the record, but as with the opinions from the state agency doctors on physical limitations, he also noted that they did not have the benefit of additional evidence submitted at the hearing level. (R. 30.) Most notably, the psychological consultants did not review hundreds of pages of logs from the Plaintiff's daily visiting nurse, which were submitted after their review. (R. 30.) The ALJ noted, however, that the updated record remained consistent with moderate limitations in social interaction and concentration, but assessed additional limitations in her ability to adapt and manage herself, use judgment for simple decisions, and deal with routine changes in the work setting, based on record evidence that she requires help

managing her medications and personal needs. (*Id.*) Accordingly, the ALJ applied more limitations than found by the psychological consultants but found them "otherwise persuasive." (*Id.*)

The ALJ also considered the opinions of Kevin Chiang, a Licensed Clinical Social Worker who frequently treated the Plaintiff. (*Id.*) The ALJ discussed the impairment questionnaires filled out by Chiang. (*Id.*) On the first form, dated December 12, 2018, Chiang opined that the Plaintiff would be off task more for than 25% of a workday, incapable of tolerating even low stress, and assessed her as "markedly limited," the most extreme level of impairment on the form, in every functional category except for one. (R. 699-703.) On the second form, dated January 3, 2020, in the section for mental abilities needed for unskilled work, he indicated that she had an extreme limitation, defined as "no useful ability to function," for every category listed except for two that were marked "unable to meet competitive standards." (R. 708-10.) For the typical functional categories (understanding information, applying information, concentrating, etc.) Chiang marked extreme limitation for every category. (R. 711.) He also opined that she would miss more than four days of work every month. (R. 712.) The third questionnaire had essentially the same responses as the first, but had moderate limitations in two categories with the rest markedly limited, and it was cosigned by an MD. (R. 790-91.)

The ALJ found Chiang's opinions to be "not persuasive," stressing that they were not well-supported or consistent with the record. (R. 30.) In particular, he noted that Plaintiff regularly presented to medical appointments as oriented with appropriate affect and judgment, reported no suicidal or homicidal ideation, and exhibited some ability to manage herself. (*Id.*) The ALJ concluded that "[w]hile Chiang's treatment notes support some ongoing difficulty in these areas, they do not support the more significant limitations opined." (*Id.*) Ultimately, he concluded that

she could perform simple, routine tasks; use judgment limited to simple, work-related decisions; deal with routine changes in work setting; have no contact with the public; and not work on a team with coworkers.  (R. 25-26.)

### 1.    The ALJ Appropriately Weighed the Treating LCSW's Opinion

The Plaintiff first argues that substantial evidence does not support the ALJ's conclusion that Chiang's opinions were not persuasive.  (ECF No. 18-1, at 8.)

For applications such as this one, which are filed on or after March 27, 2017, the SSA has changed how ALJs are to assess the medical opinions of treating sources.  The new regulations provide that the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources."  20 C.F.R. § 416.920c(a).  According to the new regulations, an ALJ must "articulate . . . how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record" based on the following five factors:  (1) supportability, (2) consistency, (3) relationship with the claimant, which focuses on the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship, and (4) the specialization of the source, with the most important factors being supportability and consistency.  20 C.F.R. § 416.920c(b).  The ALJ must explicitly articulate how he considered the supportability and consistency of the medical opinion.  *See* 20 C.F.R. § 416.920c(b)(2).  The ALJ may, but is not required to, explain how he considered the other factors.  *Id.*  When considering "supportability," ALJs are directed to look to "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s) . . . ."  20 C.F.R. § 416.920c(c)(1).  The "consistency" factor goes to the opinion's consistency with other evidence in the record.  "The

more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."   20 C.F.R. § 416.920c(c)(2).[4]

The ALJ explicitly discussed the supportability and consistency of Chiang's opinions.  (R. 30.)  First, the ALJ explained that Chiang's opinion was not consistent with his own treatment notes, which demonstrated that the Plaintiff regularly presented as oriented, had appropriate affect, intact thought process, intact judgment, no suicidal or homicidal ideations, improved with medication and exhibited some ability to manage herself.  (*Id.*)  He also explained that Chiang's opinions were not consistent with the record as a whole, which showed that the Plaintiff can attend appointments on time, cooperate with providers, respond appropriately to questions and commands, and care for personal needs.  (R. 30-31.)  The ALJ concluded his analysis of Chiang's opinions by stressing that the record does not document marked or extreme limitations in nearly every category of functioning.

---

[4]        As an LCSW, Chiang is not considered an "acceptable medical source" under the new regulations.  20 C.F.R. § 416.902(a).  But under those regulations, ALJs are obliged to apply the 20 C.F.R. § 416.920c(c) factors to "medical sources," irrespective of whether those sources are "acceptable" or not. *John W. v. Kijakazi*, No. 5:20-CV-01180 (BKS), 2022 WL 768672, at *15 n.12 (N.D.N.Y. Mar. 14, 2022).  An LCSW may be a "medical source" so long as he is "licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." 20 C.F.R. § 416.902(i); *see also John W.*, 2022 WL 768672, at *15 n.12; *Kimberly W. v. Kijakazi*, No. 6:20-CV-925 (DJS), 2022 WL 561665, at *3 (N.D.N.Y. Feb. 24, 2022); *Morris v. Saul*, No. 1:19-cv-01588 (RDM/GBC), 2021 WL 3889555, at *6 (M.D. Pa. Jan. 4, 2021) ("While licensed clinical social workers and clinical mental health counselors are not 'acceptable medical sources,' under the new applicable regulations, they are 'medical sources' who can render 'medical opinions' for consideration of a claimants' disability.); *but see Robert T.S. v. Comm'r of Soc. Sec.*, No. 5:21-cv-38 (CFH), 2022 WL 1746968, at *12 (N.D.N.Y. May 31, 2022) (holding that an ALJ was "not required to articulate how he or she considered evidence from nonmedical sources," and concluding that an opinion from an LCSW was "not a medical opinion") (brackets omitted).  Here, the Commissioner does not contend that the ALJ was not required to apply the 20 C.F.R. § 416.920c factors to LCSW Chiang's opinions.

Nevertheless, the Plaintiff argues that this conclusion is not supported by substantial evidence. First, the Plaintiff faults the ALJ for comparing the impairment questionnaires to Chiang's treatment notes, arguing that medical records "do not necessarily assess functional abilities." (ECF No. 18-1, at 11 (citing *Perez Garcia v. Berryhill*, No. 3:18-CV-00986 (WIG), 2019 WL 2022191, at *4 (D. Conn. May 8, 2019).) *Perez-Garcia*, however, concerned evaluation of a medical source statement under the treating physician rule. *Id.* at *4. The new regulations concerning evaluation of a medical source opinion explicitly require an ALJ to compare the opinion to objective medical evidence. 20 C.F.R. § 416.920c(c)(1). Indeed, the "law is clear" that an ALJ "is permitted to balance medical opinion evidence with the entire record and to question the opinion evidence to the extent the record reveals inconsistencies." *Trevor H. v. Kijakazi*, No. 3:20-CV-1540 (KAD), 2022 WL 1211651, at *7 (D. Conn. Apr. 25, 2022). The ALJ committed no error in comparing Chiang's opinions to his treatment notes.

Second, the Plaintiff argues that Chiang's treatment notes do support extreme limitations if they are viewed without "cherry-picking." (ECF No. 18-1, at 11.) "The term 'cherry' picking generally refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source . . . . The fundamental deficiency involved with 'cherry picking' is that it suggests a serious misreading of evidence, or failure to comply with the requirement that all evidence be taken into account, or both . . . ." *Rodriguez v. Colvin*, No. 3:13-cv-1195 (DFM), 2016 WL 3023972, at *2 (D. Conn. May 25, 2016) (internal quotation marks omitted). The Court agrees with the Defendant, however, that the ALJ's analysis of Chiang's opinion is more accurately described as merely weighing the evidence. (*See* ECF No. 23-1, at 12 (citing *Kimberley H. v. Comm'r of Soc. Sec.*, No. 19-cv-6766, 2021 WL 1054373, at *7 (W.D.N.Y. Mar. 19, 2021).) The Plaintiff mentions several notations in Chiang's treatment notes that the ALJ either briefly

mentioned or failed to mention, including homicidal ideation with respect to group therapy, nightmares about being attacked, her history of trauma and abuse, irritable mood, impaired thought process, a limited ability to resolve daily tasks, her assault of a Walgreen's employee, pacing in her apartment with a knife, barring her door with a chair, and her history of auditory hallucinations. (ECF No. 18-1, at 12-13.)  Yet the ALJ did not entirely ignore this evidence, as he elsewhere discussed her history of trauma, paranoia, hallucinations, and reluctance to leave the house, and noted that Chiang's treatment notes do "support some ongoing difficulty in these areas."  (R. 24, 28, 30.)  The ALJ clearly did not fail to consider this evidence entirely, he merely concluded that Chiang's treatment notes are not supportive of the conclusion that the Plaintiff is markedly or extremely limited in nearly every functional category.  To the contrary, the ALJ appropriately stressed, and the record confirms, that Chiang's own treatment notes showed that the Plaintiff regularly presented as oriented, had appropriate affect, intact thought process, and intact judgment (R. 566, 714, 721, 727, 730, 736, 742, 751, 757); that the Plaintiff denied homicidal or suicidal ideation (R. 567, 715, 722, 727, 730, 736, 742, 751, 757); that the Plaintiff was improving with medication (R. 714-15, 718, 722.); and that she demonstrated an ability to manage herself by stabilizing her housing situation.  (*See* R. 715, 728.)  It cannot be said that the ALJ "ignore[ed] conflicting evidence from the same source."  *Rodriguez v. Colvin*, 2016 WL 3023972, at *2.

The Plaintiff also argues that Chiang's opinion is consistent with the rest of the record evidence.  (ECF No. 18-1, at 12-14.)  Merely citing contrary record evidence that supports Chiang's opinions, however, does not mean that the ALJ's conclusions were not supported by substantial evidence.  "It is not the function of this Court to re-weigh evidence or consider de novo whether [a claimant] is disabled."  *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, No. 1:19-cv-01523 (EAW), 2021 WL 707744, at *3 (W.D.N.Y. Feb. 24, 2021).  Rather, "[a]bsent a legal error,

the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020).  There is sufficient evidence for the conclusion that Chiang's opinion that the Plaintiff is markedly or extremely limited in most functional categories is not consistent with the record.  For example, the visiting nurse logs, frequently cited by the Plaintiff, do include notations that the Plaintiff exhibits disruptive, infantile, inappropriate, or paranoid behavior, and that her symptoms are poorly controlled (R. 822-23, 826, 832), but they also include notations that the plaintiff has few limitations in hygiene and self-care and that she "is not homebound because [she] leaves home frequently for long durations without a taxing effort for non-medical reasons." (R. 837-42, 851, 1194.)  Additionally, Mikveh Warshaw, an advanced practice registered nurse at the community Health Center where the Plaintiff visited Chiang, frequently noted that the Plaintiff reported to the clinic on time and was well-groomed, cooperative, and appropriate. (R. 718, 724, 733, 739, 745, 748, 754.)  This record evidence is not consistent with Chiang's conclusion that the Plaintiff had "no useful ability to function" in the realm of maintaining regular attendance and being punctual within customary limits. (R. 709.)  The Court does not suggest, nor did the ALJ, that an ability to regularly attend medical appointments would equate to an ability to perform full-time work; rather, it is an appropriate factor to consider in finding Chiang's opinion to be inconsistent with the record.  *See Renalda R. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00915 (TWD), 2021 WL 4458821, at *11 (N.D.N.Y. Sept. 29, 2021); *Saenz v. Berryhill*, No. 16 CIV. 574 (RWS), 2017 WL 1944158, at *8 (S.D.N.Y. May 10, 2017) (holding the ALJ reasonably gave less weight to doctor's opinion about maintaining a schedule, given "evidence of Plaintiff regularly attending program appointments" among other

things).  In sum, the ALJ appropriately determined that Chiang's opinions were not consistent with the record evidence and determined that his opinions were not persuasive.

### 2.    The ALJ Appropriately Weighed the Psychological Consultant's Opinions

The Plaintiff also briefly argues that the opinions of the psychological consultants cannot form the basis for substantial evidence as they were not based on a complete record or an examination of the Plaintiff.  (ECF No. 181, at 16-17.)

The Court first addresses whether the opinions of the psychological consultants were stale because they did not review the entire record.  The ALJ acknowledged that the psychological consultants did "not have the benefit of additional evidence submitted at the hearing level."  (R. 30.)  In particular, they did not review exhibit 14F, which is approximately fifty-six pages, or one year, of treatment notes from Warshaw and Chiang at the Community Health Center, or exhibits 18-20F, which are the logs from the Plaintiff's visiting nurse, from October 31, 2019, to February 6, 2020.  (R. 714-60, 814-1360.)  The ALJ explained that the updated record remained consistent with the moderate limitations in social interaction and concentration, persistence, and pace found by the psychological consultants, but also found that the Plaintiff was more limited in her ability to adapt and manage herself based on the updated record.  (R. 30.)

As with the opinions of the medical consultants, the question is whether "the treatment notes and opinions in the record before and after [the opinion was issued] demonstrate substantially similar limitations and findings."  *Camille*, 104 F. Supp. 2d at 344.  Ordinarily, of course, a medical opinion should be based on a complete record, but "[a] more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age."  *Biro*, 335 F. Supp. 3d at 470.  The updated record did not exhibit any new symptoms related to the Plaintiff's mental health.  The Plaintiff stresses that the nurse's logs provide evidence of infantile,

paranoid, or disruptive behaviors, but there are notations in Chiang and Warshaw's treatment notes that were available to the consultants that the Plaintiff paces around her apartment with a knife, blocks her door with chairs, is paranoid and fears being attacked, is depressed and anxious, has poor memory, some homicidal ideation, and hallucinations.   (R. 400, 403, 414.)   Both psychological consultants, in summarizing the records from Chiang and Warshaw, noted that the Plaintiff felt depressed, anxious, irritable, and isolated; was paranoid with no psychosis; suffered from hallucinations; was concerned about being attacked; was hypervigilant and avoidant, which was consistent with her history of trauma; and that irritability and intrusive thoughts detract from sustained and efficient focus and lead to some problem interactions. (R. 84, 88, 89, 99-101.)  The updated Community Health Center records demonstrate substantially similar limitations. (*See* 719, 722, 724, 727-28.) If anything, the updated records demonstrate that the Plaintiff's mood had stabilized thanks to the visiting nurse pre-pouring her medications every day.  (R. 714-15, 718, 722.)  In the visiting nurse logs, on essentially every day, the nurse marked some combination of dirty, disheveled, rambling and loud speech, disorganized and paranoid thoughts, anxious and depressed, and hallucinations.  (R. 822, 852, 858, 864, 870, 875, 882, 887, 893, 899, 905, 911, 917, 923, 930, 936, 942, 948, 954, 960, 970, 977, 984, 990, 1002, 1008, 1015, 1020, 1025, 1031, 1037, 1041, 1046, 1050, 1055, 1060, 1065, 1071, 1075, 1080, 1085, 1099, 1105, 1112, 1117, 1122, 1127, 1132, 1137, 1144, 1148, 1152.)  The records available to the psychological consultants had evidence of all of these symptoms, except for the notations that the Plaintiff was dirty and disheveled at home.  This alone does not render the opinions stale, particularly when the Plaintiff consistently presented to appointments well-groomed and appropriately dressed.  Where mental health records submitted after a psychological consultant reviews the record "do not change the picture of the Plaintiff's mental functioning," an ALJ can still rely on the consultant's opinion

formulating the RFC.  *Renalda R. v. Comm'r of Soc. Sec.*, No. 3:20-CV-00915 (TWD), 2021 WL

4458821, at *9 (N.D.N.Y. Sept. 29, 2021) (citing *Camille*, 652 F. App'x at 28 n.4).  The opinions

of the psychological consultants were not stale.

The Plaintiff also argues that opinions of consultants that have not personally examined

the claimant deserve "little weight" in the overall evaluation of disability, particularly with mental

health issues.  (R. 17-18.)  For this argument she cites to only cases discussing the treating

physician rule, which does not apply to this case.  Under the old regulations, the general rule was

that "the written reports of medical advisors who have not personally examined the claimant

deserve little weight in the overall evaluation of disability."  *Beckers v. Colvin*, 38 F. Supp. 3d 362,

374 (W.D.N.Y. 2014).  The new regulations instead state that an ALJ shall not "give any specific

evidentiary weight" to any medical opinion but should evaluate the opinion in accordance with the

factors in 20 C.F.R. § 416.920c(a).  Further, "[i]t is well settled that an ALJ is entitled to rely upon

the opinions of the state agency's medical and psychological consultants, since they are qualified

experts in the field of Social Security disability."  *Colvin v. Astrue*, No. 09-cv-946S, 2011 WL

3047713, at *5 (W.D.N.Y. July 25, 2011).  The ALJ properly relied on the opinions of the

psychological consultants in analyzing the Plaintiff's mental limitations.

**C.     The Court Declines to Review the Plaintiff's Remaining Arguments**

The Plaintiff also argues that if the ALJ had found Chiang's opinions persuasive, the

listings for bipolar disorder, depression, and PTSD would have been met at Step Three.  (ECF No.

18-1, at 18.)  The Plaintiff cites no authority for the proposition that this is an issue that the Court

should decide without remand.  In any event, the Court holds that the ALJ appropriately found that

Chiang's opinions were not persuasive.  Regardless, the ALJ is directed to consider whether

updating and supplementation of the psychiatric and psychological record is required and, if so, to consider whether any such new evidence meets the requirements of a Listing.

Finally, the Plaintiff argues that the ALJ failed to include all of her impairments and limitations in the RFC and in the hypothetical posed to the VE.  (ECF No. 18-1, 20-21.)  Since the RFC will have to be considered on remand, the Court also declines to review this claim.

## IV.   CONCLUSION

For the reasons stated above, I conclude that the ALJ's decision was not free from legal error.  Therefore, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 18) is **GRANTED;** the Commissioner's Motion for an Order Affirming the Decision (ECF No. 23) is **DENIED**; and the Commissioner's decision is vacated and the case is remanded for further administrative proceedings consistent with this opinion.

The Court denies the Plaintiff's request that the case be reversed and remanded for an award of benefits rather than a rehearing.  (ECF No. 18-1, at 22-23.)  To award benefits, a district court must find that, irrespective of the legal error, the record contains "persuasive proof" of the claimant's disability and "a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  A record contains "persuasive proof" of disability when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999).  That is not the case here.  The Court has examined the entire administrative record, and it has not found persuasive proof of the Plaintiff's disability.  Remand for calculation of benefits would therefore be inappropriate.

This is not a recommended ruling.  The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district

court in accordance with the Federal Rules of Civil Procedure.  (ECF No. 9.)  Appeals may be made directly to the appropriate United States Court of Appeals.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).  The Clerk of the Court is respectfully directed to enter judgment in favor of the Plaintiff, and to close the case.  It is so ordered.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge